ANDREW SAVAGE, et al. v. LUCINDA COEN SAVAGE, et al.

Middle Section.   March 5, 1927.

No petition for Certiorari was filed.

1. **Evidence.   Presumptions.   Where a decree recites that the case was heard on order pro confesso it will be presumed the order was made upon publication as required by law.**

    In an action to establish a trust where the validity of the marriage of one of the defendants was attacked because it was insisted that her husband had not been divorced from a prior wife; since the order for nonresidence publication was not copied on the rule docket, and the minutes of the court showed that a proconfesso was regularly entered and there was no evidence that the publication was not actually made, held that it must be presumed from the order that publication was made as required by law.

2. **Trusts.   Statute of frauds does not apply to parol trusts.**

    Parol evidence is admissible to set up a resulting trust even though the Statute of Frauds has been pleaded as the Statute of Frauds does not apply to trusts.

3. **Trusts.   Evidence.   Conversations with decreased are admissible to set up parol trust.**

    Conversations with the deceased are admissible to set up a parol trust, and are not subject to the rule set out in Shannon's Code, section 5598, as to transactions with or statements by the intestate, because this is not a suit by or against a personal representative or a guardian.

4. **Statutes.   A statute which is an exception to the general rule must be strictly construed.**

    Shannon's Code, section 5598, cannot be extended to cases not within its terms, as it is an exception to the general statute permitting the parties to testify, and as an exception it must be strictly construed as against the exclusion of testimony, and in favor of its admission.

5. **Liens. There must be an intent to make property security for an obligation before an equitable lien is created.**

In order to create an equitable lien there must be an intent to make the particular property a security for the obligation; and where that intent is clear, equity will treat an agreement to give a mortgage or a lien, as effective to create an equitable lien, where money has been parted with on good faith that there would be a compliance, the maxim underlying the doctrine being, that equity regards as done that which ought to be done.

6. **Liens. Evidence. Evidence held not to create an equitable lien.**

Where the evidence showed that one of the complainants had deeded land to his father with the understanding that the father was to hold the same for a home for complainant and his family, and the complainant had paid a part of the purchase price, held that this evidence did not establish an equitable lien in favor of the complainant.

7. **Trusts. Property conveyed or given by one person to another to hold for the use of a third person creates a resulting trust.**

When property is conveyed or given by one person to another to hold for the use of a third person a trust will thereby be created and will give equitable jurisdiction to compel the application to the purposes of the trust.

8. **Trusts. Evidence held to establish a resulting trust.**

Where a complainant purchased a home and then deeded it to his father with the understanding that the father would hold it for complainant and his family and the evidence showed that the complainant had paid $500 of the purchase price, held that a resulting trust was established in the property.

9. **Trust. Oral evidence to establish a trust must be clear, full and convincing.**

A resulting trust may be established by parol evidence but it must be of the most convincing character. It is not essential that the evidence be of a character to remove all reasonable doubt, but only that it be so clear, cogent and convincing as to overcome the opposing evidence coupled with the presumption that obtains in favor of the written instrument.

10. **Trusts. Interest of party under a resulting trust defined.**

Where the evidence showed that the beneficiary had paid $500 of the purchase price $1250, such beneficiary is entitled to a resulting trust in the land in the proportion that the amount paid bears to the whole consideration. The amount at the time of the sale of the land may be more or less than the amount originally invested.

11. **Homestead. Widow is not entitled to homestead in property owned by the husband in common with others.**

It is a well settled rule in Tennessee that there can be no homestead in undivided interest in land.

12. **Dower. Widow is entitled to dower in undivided interest in land.**

A widow is entitled to dower in all lands of which her husband died seized and possessed and this includes land held by him as tenant in common.

Appeal from Chancery Court, Davidson County; Hon. Jas. B. Newman, Chancellor.

Modified, affirmed, and remanded.

John T. Allen, of Nashville, for appellant, Lucinda Coen Savage.

Noah W. Cooper, of Nashville, for appellees, Andrew Savage, et al.

CROWNOVER, J. The bill in this cause was filed by the complainants against Lucinda Coen Savage and Ance Savage, to set

up a resulting trust and beneficial ownership in a house and lot in the City of Nashville.

The bill alleged that C. B. Savage died intestate in Davidson county on March 29, 1924 and left the complainants and the defendants, except Lucinda, as his children and only heirs at law, and that he was the owner of a house and lot, subject to a resulting trust in favor of the complainants, in that complainant Andrew Savage had purchased this house and lot for the consideration of $1250, of which he had paid $200 in cash, and had executed his several notes for the remainder of the consideration, and that thereafter Andrew Savage had conveyed this property, without consideration, to the defendants C. B. Savage, with the understanding that the same was to be held in trust for the benefit of the complainants as a home; that Andrew Savage had paid $200 of the consideration, and had agreed that he would go up north and work where he could get better wages, and would help C. B. Savage pay for said property; that under this agreement he had conveyed the property to C. B. Savage, and thereafter furnished him $700 with which to pay for the same; that after complainant Andrew Savage had left his home and had gone off to work, said C. B. Savage took the defendant Lucinda Coen into his home ostensibly as a housekeeper, but in fact had lived with her as husband and wife up until his death; and that, thereafter, she claimed to have married C. B. Savage about ten days before his death; that after his death she took possession of said property claiming to be his widow and had ousted the complainants and refused to let them remain in the home. The bill alleged that she was never legally married to C. B. Savage and was not his lawful widow, because C. B. Savage had previously been married to one Willie Daniel, from whom he had attempted to secure a divorce, but in fact, said divorce was not legal, as nonresident publication had not been made, and that the defendant Lucinda Coen had previously been married to one Nick Dalton, and had lived with him twelve or fifteen years and separated, and from whom she had never secured a divorce.

The bill also alleged that the defendant Lucinda had procured the services of some other negro who impersonated C. B. Savage, and that she had gone to the town of Franklin, where a marriage license was procured and a marriage ceremony performed, from which it was pretended that she was married to C. B. Savage, but in fact the party who went through the pretended marriage was not C. B. Savage, and that she was now fraudulently claiming to be the widow of C. B. Savage; and for all of these reasons the defendant Lucinda was not entitled to any interest in or to the possesion of said property.

The bill further alleged that complainant Andrew Savage having paid $900 of the purchase money for said property, and having conveyed the property to his father with an express understanding that the same would be held for him and the other complainants as a home, it was therefore alleged that the complainants were entitled to set up a resulting trust in the property to this extent, and prayed that the rights of the parties be decreed by the court, and for a sale of the same.

The bill was amended by leave of court so as to make the defendant Willie Daniel a party defendant, and it was alleged that she was the real widow of the deceased C. B. Savage.

Willie Daniel filed an answer in which she admitted that she was legally married to C. B. Savage, and admitted that the divorce proceeding was void because of want of publication of nonresident notice, and because the order for a nonresident publication had not been entered of record on the rule docket; and further alleged that she had agreed to a sale of the property, but only claimed dower therein.

The defendant Lucinda Coen Savage filed an answer, in which she denied that she was ever legally married to Nick Dalton, but alleged that she had gone through a marriage ceremony with him several years ago by which she thought at the time that she had actually married him, and that she had lived with him twelve or fifteen years, but later ascertained that he had not obtained a . divorce from his former wife, that he had filed a bill for a divorce at Franklin, Tennessee, but it had been dismissed for want of prosecution, and upon ascertaining these facts, although she had five children by him, she left him and they separated, and therefore she was an unmarried woman up until the time she married C. B. Savage.

She denied that C. B. Savage was not legally divorced from Willie Daniel, and she denied that she was not the lawful widow of C. B. Savage; but alleged that she and C. B. Savage were lawfully married in Franklin on March 18, 1924, and denied that she had previously thereto lived with C. B. Savage as husband and wife, but alleged that she had lived in his home, as a housekeeper, from the year 1921 up to the date of their marriage.

A large volume of testimony was taken on all the issues, and the Chancellor referred the cause to a special commissioner to take proof and report (1) Whether C. B. Savage and Lucinda Coen were legally married, and (2) Whether Andrew Savage had paid any of the purchase money for said property. The special commissioner reported, first, that C. B. Savage and Lucinda Coen were legally married on March 18, 1924, and that she was his law-

ful widow, and second, that Andrew Savage had paid $500 of the purchase money consideration for said property.

At the hearing the Chancellor confirmed the report of the special commissioner, and decreed that complainant Andrew Savage had an equitable lien on said property for the $500 paid by him, and decreed that the property be sold, and out of the proceeds, the Master should pay all costs, then the $500, with interest to Andrew Savage, and that Lucinda Coen Savage was entitled to homestead and dower out of the balance, for and during her natural life, and that the children of C. B. Savage owned the remainder interest, subject to her homestead and dower rights. The defendant Lucinda Coen Savage prayed and obtained an appeal, and has assigned two errors, which are in substance as follows:

(1) The court erred in overruling defendants' exceptions to the oral testimony, by which it was sought to prove the conversations with the deceased C. B. Savage as to the payment of a part of the purchase money by Andrew Savage, and facts setting up a resulting trust.

(2) The court erred in holding that Andrew Savage was entitled to an equitable lien upon said house and lot for the $500 paid by him on the purchase money, and in ordering a sale of the property, as no such question was raised in the pleading and proof.

As defendant Lucinda has appealed, it is therefore necessary for us to determine whether she is the widow of C. B. Savage.

After an examination of the whole record, we are of the opinion that Lucinda Coen Savage had legally married C. B. Savage on March 18, 1924, and is his lawful widow. The proof shows that Nick Dalton married one Kittie Monner and that they separated. He filed a bill at Franklin, Tennessee, but the case was dismissed for want of prosecution, and he never obtained a divorce from her, but he later went through a marriage ceremony with Lucinda Coen and lived with her twelve or fifteen years, when they separated. Lucinda says that she left him because she ascertained that he had no divorce, while he insists that she ran away with another negro, but these facts are immaterial. The fact remains that he was not divorced from his wife and that he and Lucinda were not legally married; hence she was an unmarried person at the time that she married C. B. Savage.

The proof also shows that C. B. Savage had previously been married to Willie Daniel, and that he filed a bill in the circuit court of Nashville alleging that she had deserted him and had run away with another negro, and was a nonresident of the State of Tennes-

see. The rule docket of the court shows that an order of publication had been made, but it does not show that the publication was actually made. However, the minutes of the court show that a pro confesso was regularly entered, in which it was recited: "In this cause it appearing to the court that the defendant is a nonresident, and it further appearing that due publication having been made as required by law, etc.," the defendant failed to appear and make defense, the bill was therefore taken for confessed, and later a decree was entered on pro confesso granting an absolute divorce on the ground of adultery.

The complainants have taken the testimony of the clerk and his deputy, and also that of a newspaper man and of the attorney who represented C. B. Savage, by which it was attempted to be shown that no nonresident publication was ever made, but the testimony of all these witnesses show that they had no independent recollection about the proceeding, and we are left with only the record.

It is insisted by the complainants that the divorce decree in that case is void, because the order for nonresident publication was not copied on the rule docket, and also because there was no nonresident publication actually made. We think there is nothing in these contentions (Shannon's Code, secs. 6164 and 6167). Where the defendant is a non-resident, jurisdiction of the court over her person is sufficiently shown by recitals in the orders on the rule docket that the publication was made, or in a subsequent decree that the cause was heard on order pro confesso; or in the absence of all other evidence, by the mere recital in the final decree that the cause was heard on order pro confesso, as it will be presumed such order was made upon publication as required by law. If the judgment pro confesso does not show all these facts of publication, it will still be sufficient evidence of publication, if it recite that publication was made according to law. See Allen v. Gilliland, 6 Lea, 521; Finch v. Frymire, 36 S. W., 883; Gibson's Suits in Chancery, revised edition, sec. 199; 11 Michie's Tenn. Ency. Dig., 689-691. Hence, we think the recitals ordering publication, and that due publication had been made as required by law, are sufficient, and that the divorce decree is valid.

We are also of the opinion that C. B. Savage and Lucinda were legally married in the town of Franklin on March 18, 1924, therefore, she is his lawful widow.

We think that the first assignment of error, is not well made because the defendant Lucinda Coen Savage did not plead the Statute of Frauds. (Huffine v. Campbell, 149 Tenn., 47, 257 S. W., 80).

Parol evidence is admissible to set up a resulting trust, even though the Statute of Frauds had been pleaded, as the Statute of Frauds does not apply to trusts. See Woodfin v. Marks, 104 Tenn., 512, 58 S. W., 227; Thompson v. Thompson, 54 S. W., 145; Insurance Co. v. Waller, 116 Tenn., 1, 95 S. W., 811; Mee v. Mee, 113 Tenn., 456-457, 82 S. W., 830; Clark's Equity, secs. 250, 268, and pages 670, 677; J. C. Caprum v. Bransford Realty Co., et al., 4 Tenn. App. Rep., 237; Mrs. Ella Walker v. M. L. Walker, et al., 2 Tenn. App. Rep., 279.

Conversations with the deceased are admissible to set up a parol trust, and are not subject to the rule set out in Shannon's Code, section 5598, as to transactions with or statements by the intestate, because this is not a suit by or against a personal representative or a guardian. This statute. Shannon's Code, section 5598, cannot· be extended to cases not within its terms, as it is an exception to the general statute permitting the parties to testify, and as an exception, it must be strictly construed as against the exclusion of testimony, and in favor of its admission. See Shannon's New Code. sec. 5598, notes 7, 32 and 34. It results that this assignment of error must be overruled.

Now the second assignment of error, with respect to the equitable lien, presents a much more difficult question. Originally, our courts did not recognize the doctrine of equitable lien's in cases of this kind, but the doctrine has grown up in recent years, and the principle has been firmly fixed by the recent decisions of our court, in such cases as Milam v. Milam, 138 Tenn., 686, 200 S. W., 826; and Harrison v. Harrison, 149 Tenn., 604-611, 259 S. W., 906. But in order to create an equitable lien there must be an intent to make the particular property a security for the obligation; and where that intent is clear, equity will treat an agreement to give a mortgage or a lien, as effective to create an equitable lien, where money has been parted with on good faith that there would be a compliance, a maxim underlying the doctrine being, that equity regards as done that which ought to be done. See the two cases last above cited.

But in this case we think there was no intent to make this particular property a security for the money advanced by Andrew Savage. Such was not in the contemplation of the parties at the time, and the bill was not filed for that relief. "There can be no recovery on a predicate outside of and inconsistent with the scope of the plaintiff's pleadings." Bailey v. Henry, 125 Tenn., 390, 407, 143 S. W., 1124.

Hence, we think the Chancellor was in error in decreeing that the complainant Andrew Savage was entitled to an equitable lien on this property for the $500, and in ordering a sale of the prop-

erty for its payment, and this assignment to this extent, must be sustained. But one of the complainants is a minor, and the defendant prayed a broad appeal. Now what are the rights of the parties?

The special commissioner and the Chancellor found as a fact that complainant Andrew Savage paid $500 of the purchase money for this property. The bill alleges and the proof shows that complainant Andrew Savage conveyed this property to his father, C. B. Savage and paid the $500 of the purchase money with an express verbal agreement that C. B. Savage would hold the property as a home for Andrew Savage and the other complainants, and if they should live longer than C. B. Savage they should still have it for a home. Andrew Savage had paid $200 at the time of the conveyance to his father, and the lower court found that he had paid $300 thereafter on the consideration, making in all $500 furnished by him. The defendant did not appeal from this holding and has assigned no errors on this proposition. Now, we think that complainants have a resulting trust to this extent. When property is conveyed or given by one person to another, to hold for the use of a third person, such a trust will thereby be created as will give equity jurisdiction to compel the application to the purposes of the trust. See Clark's Equity, sec. 258; Steele v. Clark, 77 Ill., 471.

Where a minor bargains with another for a tract of land, but the latter being unwilling to make a contract with the minor, on account of his age, it was agreed between them that the minor's father should intervene and become the contracting party in his stead. Accordingly the trade was consummated by the minor's father and the vendor, and the land was conveyed to the father, but the money paid for the land was furnished by the minor and belonged to him, the court held that these facts made out a resulting trust in favor of the minor, who had furnished the money. See Johnson v. Anderson, 7 Bax., 252; 3 Webb's Meigs Tenn. Dig., 2986; Burks v. Burks, 7 Bax., 353.

A beneficiary may sue on a contract made for his benefit. See Clark's Equity, secs. 90, 258, 260; Ruohs v. Insurance Co., 111 Tenn., 406-411, 78 S. W., 85; McCarty v. Blevins, 5 Yerg., 195, 26 Am. Dec. 262.

Where one furnishes money with which to purchase property, and the title is taken in the name of another, there is a presumption of a resulting trust, as a purchaser is more likely to intend the stranger to hold in trust for him, than he is to make the stranger a gift. This is where the property is paid for by one and the title is taken in another; but such presumption of a resulting trust in his favor does not arise where the party conveys the property to another for a recited consideration, as it is presumed that the in-

tention is stated in the conveyance. Therefore, while a parol trust may be set up by oral evidence, yet such evidence should be clear, full and convincing. While an implied or resulting trust may be established by parol evidence, yet both upon reason and authority the courts will not enforce it, unless it be established by the most convincing and irrefragable evidence. In other words, it must be sustained by proof of the clearest and most convincing character. To sustain a resulting trust upon parol evidence in the teeth of the terms of the written instrument, it is not essential that the evidence be of a character to remove all reasonable doubt, but only that it be so clear, cogent, and convincing as to overcome the opposing evidence, coupled with the presumption that obtains in favor of the written instrument. See Stone v. Maning, 103 Tenn., 232, 233, 52 S. W., 990, where the supreme court in discussing the weight of evidence to set up resulting trusts, etc., said, by the expression.

"A mere preponderance of the evidence will not suffice, nothing more is meant than that a mere preponderance of evidence on the side of the complainant will not overcome the defendant's evidence, reinforced, as the latter is, by a presumption in favor of the writing assailed. If, however, the complainant's evidence outweighs both the presumption and the other evidence in favor of the defendant, then the complainant had made out his case, even though the preponderance in his favor be very slight; and this is true, whatever the character of the suit, and however strong the presumption to be overcome." See Gibson's Suits in Chancery, Revised Edition, sec. 446; McBee v. Bowman, 89 Tenn., 132, 14 S. W., 481; Stone v. Manning, 103 Tenn., 232; 12 Michie's Tenn. Ency. Dig., 54-57; Shannon's New Code, 3679, notes 99 to 105; Mrs. Ella Walker v. M. L. Walker, et al., 2 Tenn. App. Rep., 279; J. C. Caprum v. Bransford Realty Co., et al., supra.

Now in this case the complainant Andrew Savage paid $500 of the purchase money. He testified that he made this conveyance to his father and paid the purchase money with an express understanding and agreement that his father would hold this property as a home for the use of himself and the complainants. He further testified that his father agreed not to marry, nor to do anything with the property that would interfere with its use. Other witnesses testified that C. B. Savage told them that the complainant Andrew Savage was helping him to pay for the home, and he did help to the extent of $500; hence we hold that all the complainants have an interest in the property in the proportion of $500 to the whole consideration $1250 paid for the property,

in other words, they are entitled to a resulting trust in two-fifths of said property, and the same is hereby declared in their favor to this extent. Where a party pays a part of the consideration, with an agreement sufficient to set up a resulting trust, the same will be declared to that extent in his favor. See Mrs. Ella Walker v. M. L. Walker, et al., supra.

It follows that the defendant is not entitled to homestead in the property, because of the well settled rule in this state that there can be no homestead in undivided interests in land. See Case v. Joyce, 89 Tenn., 337, 16 S. W., 147; Mrs. Ella Walker v. M. L. Walker, et al., supra. But defendant as widow is entitled to dower out of the other three-fifths of said property, as a widow is entitled to dower in all lands of which her husband died seized and possessed, held by him as tenant in common. See Clift v. Clift, 87 Tenn., 17, 9 S. W., 198, 360; Walker v. Walker, 6 Cold., 571.

It results that we hold that the complainants, Andrew Savage, Lottie May Savage and R. J. Savage have a resulting trust in two-fifths interest in said property, that the defendant Lucinda Coen Savage is entitled to a dower interest as widow in the remainder three-fifths interest, and that the children of C. B. Savage, deceased, to-wit, Andrew Savage, Lottie May Savage, R. J. Savage, Eula Bell Savage Smith, and Ance Savage, own the remainder interest, subject to the resulting trust and the dower interest. The property will be sold and the proceeds divided in accordance with this opinion, after the payment of all costs. One-half of the cost of the cause, including the cost of the appeal, is adjudged and decreed against appellant and the surety on her appeal bond, and the other half is decreed against the appellees. Executions will issue accordingly, but if not paid and upon nulla bona return of the executions, the same will be paid out of the proceeds of the sale going to the respective parties before distribution as herein decreed. The cause will be remanded to the Chancery Court of Davidson county for a sale of the house and lot and for a distribution of the proceeds under proper orders in accordance with this opinion.

Faw, P. J., and DeWitt, J., concur.